IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| DAVID MORALES | CIVIL ACTION |
|---|---|
| v. | NO. 17-5579 |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA AND TRIBUS SERVICES, INC. | |

**MEMORANDUM RE: MOTIONS FOR SUMMARY JUDGMENT**

**Baylson, J.**                                                                                     February 14, 2019

This is an insurance dispute between Plaintiff David Morales, his former employer Tribus Services, Inc. (former called Corix), and Travelers Property Casualty Company of America. Plaintiff seeks a declaratory judgment that Tribus and Travelers failed to comply with Pennsylvania law when denying Plaintiff's claims for underinsured motorist ("UIM") benefits.

Before the Court are the parties' cross motions for summary judgment. For the reasons discussed below, summary judgment is granted in favor of Defendants.

**I. Facts and Procedural History**

Defendant Tribus, provides meter replacement services. Plaintiff Morales, acting in the scope of his employment, got in a car accident on October 24, 2014. (Def.'s Statement of Undisputed Facts "DSOF" at ¶1-3.) Plaintiff filed a claim against the tortfeasor and settled for the limits of the tortfeasor's liability policy, which was $15,000. (DSOF at ¶ 4.) Plaintiff then filed a claim for UIM benefits from Tribus's policy with Travelers Insurance and was denied because Tribus had opted out of those benefits. (DSOF at ¶ 5-13.)

1

Both parties agree that there was a Travelers Insurance commercial automobile policy in place when the accident occurred that was effective November 1, 2013 through November 1, 2014, and that this policy covered the vehicle Morales was driving. (Brewer Dep., ECF 23 Ex. D at 15:19-16:2l; Toledo Dep., ECF 23 Ex. E at 89:6-13.) Hamish Cummings, Executive Vice President and Corporate Secretary of Tribus, signed two UIM rejection forms: first on September 2, 2009, and again on December 20, 2012. (DSOF at ¶ 8-9.)

Plaintiff filed his complaint on November 2, 2017 in the Philadelphia Court of Common Pleas, and the case was removed to this court on December 13, 2017. (Notice of Removal, ECF 1.) After discovery, all parties filed motions for summary judgment. (Pl. Mot., ECF 22; Travelers Mot., ECF 23; Tribus Mot., ECF 25 & 26.) Both Defendants responded to Plaintiff's motion. (ECF 28 and 29.) Plaintiff responded to Travelers' motion, which had been adopted in part by Tribus (ECF 30), and Travelers replied (ECF 31).

## II. The Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL")

The MVFRL is Pennsylvania's law regarding automobile insurance.[1] 75 Pa.S.C. § 1731 governs uninsured and underinsured motorist coverage and requires that insurers offer this insurance unless the insured properly rejects it. § 1731(c) states that

> Underinsured motorist coverage shall provide protection for
> persons who suffer injury arising out of the maintenance or use of
> a motor vehicle and are legally entitled to recover damages
> therefor from owners or operators of underinsured motor vehicles.

---

[1] In a leading Third Circuit case on this issue, Travelers Indem. Co. v. DiBartolo, 171 F.3d 168 (3d Cir. 1999), Judge Becker explained that in 1990, Pennsylvania enacted the MVFRL to control increasing insurance costs, and that under § 1731(a), the amount of UM or UIM coverage became automatically equal to the bodily injury limit of a policy unless the insured effectively waives coverage. Id. at 169-70. Reviewing the language of the statute and the policy behind the MVFRL, Judge Becker held that § 1731(b) must have been intended to cover corporations, or else the goal of reducing the cost of insurance would not be served. Id. at 170.

2

> The named insured shall be informed that he may reject underinsured motorist coverage by signing the following written rejection form:
>
> REJECTION OF UNDERINSURED MOTORIST PROTECTION
>
> By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.
>
>         Signature of First Named Insured
>         Date

§1731(c.1) provides specific rules for the form of a waiver of underinsured motorist coverage:

> Insurers shall print the rejection forms required by subsections (b) and (c) on separate sheets in prominent type and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. **Any rejection form that does not specifically comply with this section is void.** If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits. On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists. Any person who executes a waiver under subsection (b) or (c) shall be precluded from claiming liability of any person based upon inadequate information.

### III. Contentions

#### a. Plaintiff's Motion

Plaintiff contends that summary judgment should be granted in his favor because (1) he was not given notice from his employer that UIM coverage had been rejected, which would have

3

given him an opportunity to purchase his own; and (2) the rejection form failed to meet the statutory requirements of 75 Pa. C.S.A. 1731(c).

To make out his first point, Morales relies upon a Philadelphia Court of Common Pleas decision <u>Bielec v American Intern. Group, Inc</u>., No. 01440, 2016 WL 7157620 (Pa. Com. Pl. Dec. 05, 2016). In <u>Bielec</u>, Judge Ramy Djerassi granted summary judgment in favor of a plaintiff employee who filed for UIM coverage, concluding that the employer's rejection of UIM coverage was void because the form did not comply with the statutory requirements. <u>Id</u>. at *7. The UIM coverage rejection form had a signature line at the bottom of the document, with at least three paragraphs between the language taken from § 1731(c) and the signature line. One of those interposing paragraphs described rejection of "stacked limits of underinsured motorist coverage," and therefore Judge Djerassi concluded that the form did not comply with § 1731. <u>Id</u>. Judge Djerassi also noted that "[e]ven if [the employer's] UIM rejection were deemed valid on statutory text analysis, we believe an employer who fails to notify its employee driver that UIM coverage has been rejected is acting against public policy." <u>Id</u>.

On appeal, the Superior Court affirmed the decision, finding that the UIM rejection was indeed void, but declining to address the public policy issues raised by the trial court. <u>Bielec v. Am. Int'l Grp., Inc.</u>, No. 336 EDA 2017, 2017 WL 6594061, at *5 (Pa. Super. Ct. Dec. 26, 2017).

Morales argues that Defendants have failed to carry their burden of producing a valid UIM rejection form because the form signed by Tribus did not state the policy number to which it applies. Morales claims that the two rejection forms produced—one from 2009 and another from 2012—do not reference a policy number. He also asserts that the 2012 form postdates the issuance of the policy and that it is therefore void. (Pl. Mot. Memo., ECF 22-2 at 10-12.)

4

To support his argument that Tribus's rejection of UIM coverage is void, Morales relies upon an Adam County Court of Common Pleas case, Weigand v. Progressive et al., 09-S-1801 (Pa. Com. Pl. May 31, 2011) (Pl. Ex. J). In Weigand, Judge Thomas Campbell found that the Defendant Progressive Insurance failed to meet its burden of producing a valid UIM coverage rejection form because "[t]he only form Progressive has produced is a form with a different policy number handwritten after the fact that contains an Erie logo. For an underinsured motorist coverage rejection form to be valid, it must sufficiently identify 'this policy' under which coverage is being rejected. See 75 Pa. C.S.A. § 1731(c)." Id. at 10-11. Judge Campbell explained that "to hold otherwise, would allow insurers to have insureds, intentionally or accidentally, sign essentially blank forms which are devoid of any information necessary to identify 'this policy,' only for the insurers to later fill in those blanks when a claim is made in order to avoid coverage." Id. at 11.

Defendants respond to Plaintiff's motion by contending that neither Bielec nor Weigand are binding on this court. (Tribus Resp., ECF 28; Travelers Resp., ECF 29.) They argue that the rejection form was within the mandate of the MVFRL and that Tribus's rejection of UIM coverage for its employees is in accordance with the policy rationale of the MVFRL. (Id.)

### b. Defendants' Motions

Although Tribus presents some arguments not echoed by Travelers, the central arguments of both Defendants are essentially the same. Defendants contend that Tribus's use of Travelers's rejection form to reject UIM coverage complied with § 1731(c), and that its rejection of UIM coverage on behalf of its employees without notice to the employees does not contravene public policy.

5

Defendants assert that the MVFRL does not require a UIM rejection form to contain a policy number to be valid. (Tribus Resp. Br., ECF 28-2 at 4; Travelers Resp. Br., ECF 29-1 at 4.) Travelers even notes the practical difficulties of Plaintiff's argument: "[f]rom a practical standpoint, if the rejection form is being completed at the policy's inception, as part of the application process, there would not yet be a policy number to include on the form." (Travelers Resp. Br. at 6 n.4.)

Both Defendants argue that this case is distinguishable from Weigand because in that case, there was a question over whether the proper insurance company had issued the rejection form. The motorcycle in question was insured by Progressive Insurance, but the UIM coverage rejection form bore a logo to the Erie insurance company. Defendants argue that here, however, there is "uncontradicted evidence… that the UIM rejection form was submitted by Tribus to Travelers, and was meant to reject UIM coverage on the Travelers' policies issued to Tribus." (Tribus Resp. Br. at 4-5 (citing Pl. Ex. C and Toledo testimony); see also Travelers Resp. Br. at 7.) Travelers explains what it sees as the undisputed facts:

> Unlike in Weigand, there are no ambiguities in the record. The record here is clear: Tribus had a single commercial automobile insurance policy issued by Travelers for the applicable policy period; Mr. Cummings signed UIM rejection forms in relation to the subject Travelers Policy in 2009 and 2012; Mr. Cummings had the authority to bind Tribus when he signed the UIM rejection forms; and the 2009 and 2012 UIM rejection forms produced during pretrial discovery in this case apply to the subject Travelers Policy.

(Travelers Resp. Br. at 8.)

Travelers responds to Plaintiff's arguments about Bielec that the public policy language was mere dicta, as the case was decided based upon the additional language in the rejection form that the court found to have created an ambiguity. (Travelers Resp. Br. at 11.) Both parties also

discuss Third Circuit precedent Travelers Indem. Co. v. DiBartolo, 171 F.3d 168 (3d Cir. 1999) where the Third Circuit agreed with the district court that "the 'linguistic style of the rejection form, designed for easy comprehension' does not evidence a legislative intent to prohibit corporations or other legal entities from executing a waiver." Id. at 170 (citing Travelers Indem. Co. of Illinois v. DiBartolo, No. CIV. A. 96-6238, 1998 WL 398144 at *6 (E.D. Pa. June 24, 1998)).

Travelers emphasizes that the language within § 1731(c) that the "named insured shall be informed that he may reject underinsured motorist coverage" specifies the named insured, not every insured, and that therefore the UIM coverage rejection followed this mandate. (ECF 29-1 at 15.)

Lastly, Tribus argues that the MVFRL does not place any obligation on a company like Tribus to accept or provide a particular insurance, but only binds the insurer. (Tribus Memo. at 3-4.)

## IV. Legal Standard

A district court should grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id. Under Federal Rule of Civil Procedure 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Id. at 255.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it

believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325.

After the moving party has met its initial burden, the adverse party's response must, "by affidavits or as otherwise provided in this rule, [] set forth specific facts showing a genuine issue for trial." Stell v. PMC Techs., Inc., No. 04-5739, 2006 WL 2540776, at *1 (E.D. Pa. Aug. 29, 2006) (Baylson, J.) (citing Fed. R. Civ. P. 56(e)); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (The nonmoving party "must do more than simply show that there is some metaphysical doubt as so the material facts."). Summary judgment is appropriate if the adverse party fails to rebut by making a factual showing "sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## V. Discussion

There are no issues of material fact in dispute. The legal issues in dispute are whether Travelers's UIM rejection form and Tribus's completion of it complied with § 1731(c) and whether Tribus is obligated to provide notice to its employee that it has rejected UIM coverage.

### a. The UIM coverage rejection forms and Tribus's rejection

There are two UIM coverage rejection forms in the record, both signed by Mr. Cummings. The first was signed on September 2, 2009 (Travelers Mot. Ex. B, ECF 23-4), and the second was signed on December 20, 2012 (Travelers Mot. Ex. C, ECF 23-5). Both forms use the statutory language from §1731(c).

As Plaintiff notes, neither form identifies the policy to which it applies, and the more recent form was signed on December 20, 2012 for a policy that had an effective date of November 1, 2012. (Pl. Mot. Ex. C, ECF 22-6.) Jennifer Toledo, insurance administrator for Tribus and its corporate designee, testified that it was her understanding that the that rejection form applied to "all future renewals unless we can cancel in writing." (Toledo Dep. 59:16-60:18; discussing Tribus _62.) It is undisputed that corporate designees of both Defendants stated that they intended this rejection to apply to the policy at issue during Morales's accident.

The UIM coverage was properly offered and rejected within the bounds of § 1731(c). First, all of the forms in Plaintiff's Exhibit C relate to the insurance policy starting on November 1, 2012, and all were signed on December 20, 2012. Plaintiff has presented no other explanation for these documents. Second, Defendants are correct that § 1731, which has been strictly construed by both state and federal courts, does not require that a policy number be found on the UIM coverage rejection form. See DiBartolo, 171 F.3d at 174 (3d Cir. 1999) ("If the insurer strictly follows section 1791, there is a conclusive presumption that the waiver of UM coverage is valid."); see also Universal Underwriters Grp. v. Tusay, Jr., No. 03-CV-2541, 2004 WL 902372, at *3 (E.D. Pa. Apr. 27, 2004) (Rufe, J.) (granting summary judgment for Defendant where the named insured, the owner of a motorcycle store, properly rejected UIM benefits for his employees but obtained UIM coverage for himself, his wife, and his general manager.)[2]

---

[2] Judge Rufe noted that the insurance company in that case failed to offer UIM benefits for corporate employees, and that this policy "appears to have violated Section 1731," but that "the MVFRL does not provide a remedy for this violation." Universal Underwriters Group, 2004 WL 902373 at *3.

### b. Public policy and notice

The only support for Plaintiff's argument that public policy would support our granting summary judgment in his favor is the Bielec case. Judge Djerassi's discussion of public policy in the Common Pleas Court decision is arguably dicta, and was not a basis for the Superior Court affirming that decision. Moreover, Third Circuit and Pennsylvania Supreme Court precedent do not support this theory. See DiBartolo, 171 F.3d 168 (3d Cir. 1999) (holding that an employer could waive UIM coverage for its employees); Salazar v. Allstate Ins. Co., 702 A.2d 1038, 1043 (Pa. 1997) (holding that a trial court may grant summary judgment in favor of insurance policy holder, even where the notice provided by the insurance company failed to comply with § 1731).

## VI. Conclusion

There are no issues of material fact in dispute and Defendants are entitled to summary judgment as a matter of law.

An appropriate order follows.

O:\CIVIL 17\17-5579 Morales v Travelers\17cv5579 Memo re MSJs.docx